(Nos. 105314, 105316 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee and Cross-Appellant, v. DARRYL SUTTON, Appellant and Cross-Appellee.

*Opinion filed April 16, 2009.*

90

Michael J. Pelletier, State Appellate Defender, Patricia Unsinn, Deputy Defender, and Shawn O'Toole, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant and cross-appellee.

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine and Anita Alvarez, State's Attorneys, of Chicago (James E. Fitzgerald, Annette Collins, Veronica Calderon Malavia and Susan Schierl Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Kilbride specially concurred, with opinion.

## OPINION

Following a jury trial in the circuit court of Cook County, defendant Darryl Sutton was convicted of seven counts of murder for the sexual assault and fatal shooting of Monica Rinaldi. Defendant was sentenced to four 100-year extended-term prison sentences and three natural life sentences. On appeal, the appellate court reversed defendant's conviction and remanded for a new trial based on, *inter alia*, its finding that the trial court had erred in admitting the hypnotically enhanced testimony of David Janik, the sole eyewitness to defendant's crime. *People v. Sutton*, 349 Ill. App. 3d 608 (2004) (*Sutton I*). On remand, the trial court granted defendant's motion to suppress Janik's testimony and also granted defendant's motion *in limine* to suppress Janik's out-of-court statements to police officers pursuant to *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004).

The State then filed an interlocutory appeal, along with a certificate of substantial impairment. 210 Ill. 2d R. 604(a)(1). The State argued that the trial court erred in suppressing Janik's identification of defendant without holding a pretrial evidentiary hearing to determine whether Janik's posthypnotic identifications of defendant were based on his independent prehypnotic recall. The State also appealed the trial court's rulings suppressing Janik's out-of-court statements to police officers.

The appellate court affirmed in part and reversed in part. 375 Ill. App. 3d 889 (*Sutton II*). The *Sutton II* court held that there was no need for an evidentiary hearing to determine whether Janik's posthypnotic lineup identification and potential in-court identifications of defendant were based on Janik's independent prehypnotic recall, because the record clearly showed that Janik's testimony was influenced by hypnosis, making it *per se* inadmissible. 375 Ill. App. 3d at 896. The *Sutton II* court held that, on retrial, Janik could testify only to matters that he could recall prior to hypnosis. 375 Ill. App. 3d at 896. With regard to Janik's out-of-court statements, the *Sutton II* court held that Janik's statements to police officers at the scene were admissible because they were not testimonial under *Crawford*. See 375 Ill. App. 3d at 899. However, Janik's statements to police in the ambulance were testimonial. 375 Ill. App. 3d at 899. Nonetheless, the *Sutton II* court held that Janik's statements to police in the ambulance were admissible because Janik was available for cross-examination. 375 Ill. App. 3d at 899. The *Sutton II* court rejected defendant's claim that Janik was unavailable for cross-examination by virtue of his decision to undergo hypnosis. 375 Ill. App. 3d at 899.

Both the State and defendant filed petitions for leave to appeal the *Sutton II* court's decision. 210 Ill. 2d R. 315(a). This court allowed both petitions and consolidated the cases.

## BACKGROUND

Shortly after midnight on February 14, 1991, police responded to calls of a man banging on doors and ringing the doorbells of homes on Forest Avenue in Brookfield, Illinois. When the officers arrived on the scene several minutes later, they saw a man with blood on his face and on his clothing, staggering down the front porch stairs of a home. The man, David Janik, walked up to the officers and told them that he had been shot and robbed and that his girlfriend also had been shot. When the officers asked Janik who shot him, he told them that the offender was a black male, 30 to 35 years old, with a moustache, wearing a dark coat and dark hat. When the officers asked where the offender had gone, Janik pointed to an alley. Janik also told the officers that his girlfriend was in her car, parked in an alley two houses north. The officers discovered Janik's girlfriend, Monica Rinaldi, lying across the backseat of her car, naked except for a pair of socks on her feet. Rinaldi had sustained a fatal gunshot wound to the head.

Officer Timothy Moroney rode with Janik in the ambulance to the hospital. In the ambulance, Janik told Moroney that he and Rinaldi were parked in a parking lot and were kissing when a man got into the car on the driver's side. The man forced Janik and Rinaldi over to the passenger's side. Janik described the man as a black man, about 30 to 35 years old, with a moustache, wearing a dark coat and hat. Janik told Moroney that the man drove off, and eventually stopped near a pet store called Archer Puppies, where he forced Janik to get inside the trunk of the car. Janik told Moroney that after driving for a length of time, the car stopped again and he heard gunshots from inside the car. The man then opened the car's trunk and shot Janik in the head. Janik eventually was able to open the hatchback from the trunk and exit the car through the driver's side door.

At the hospital, doctors determined that the bullet

had traveled through Janik's left temporal region and had lodged in his upper right shoulder. The bullet did not penetrate the cranium or cause any major vascular injuries. Although Janik was neurologically intact, he suffered amnesia concerning the offense and could not remember anything from the time he left work on February 13, 1991, until he awoke in the hospital. Janik was in the hospital for five or six days. During that time, he had no independent recollection of the offense, but learned some of the details from his family and friends. After he was released, Janik viewed police mug books, but was unable to identify his assailant.

Thereafter, in an effort to regain his memory of the crime, Janik began seeing Dr. Steven Ries in March 1991. Janik continued seeing Dr. Ries through December 1991. During therapy, Janik underwent guided imagery and dream interpretation, as well as hypnosis. Janik could not recall the exact number of times he had been hypnotized, but he believed it was more than once. Janik testified that he did not believe that he could visualize or remember the offender's face on April 19, 1991. Janik could not recall whether he still had difficulty visualizing the offender's face on May 11, 1991. Janik said that his memory came back in bits and pieces, and he eventually regained his memory of the entire evening. He did not think he regained any more memories of the incident after he stopped seeing Dr. Ries.

A composite sketch of Janik's assailant was prepared, although there was conflicting testimony concerning when the sketch was made. Detective Michael Manescalchi testified at trial that he drew the composite sketch of the offender on February 28, 1991, based on information provided by Janik, although Manescalchi had testified at a pretrial hearing that he was uncertain whether someone helped him prepare the sketch. Janik, however, testified that his memory of the assailant came back to

him while he was seeing Dr. Ries. Janik stated that after he remembered what the assailant looked like following a session with Dr. Ries, he asked an artist friend to help him draw the sketch. Janik gave the completed sketch to Detective Manescalchi. Janik testified that he never sat down and drew a sketch with Detective Manescalchi.

In September 1991, during the course of his therapy with Dr. Ries, Janik provided Detective Manescalchi with a more detailed description of his assailant. Janik now described the assailant as a black male, approximately 5 feet, 11 inches tall, weighing 175 pounds, with a moustache, medium skin, and black hair cut very short and neat. Janik said that the assailant wore a caramel-colored leather driving hat with a matching leather jacket.

Janik also provided Manescalchi with a more detailed and slightly different version of the offense. Janik said that on the night of the offense, he and Monica left a bar called Sock Hops and walked to her car. Monica was in the driver's seat and he was in the passenger seat when the offender opened the driver's side door all the way, pointed a gun and told Monica to move over. Janik told Manescalchi that the offender turned on the windshield wipers, turned the lights on, and kept checking the mirrors. The offender asked for Janik's wallet and put it in his lap when Janik gave it to him. Janik described the route taken by the offender and said that the offender told him, "If you I.D. me, I will kill you." After driving for awhile, the offender stopped the car in an alley, told Janik to get out, opened the trunk of the car and told Janik to get in. Janik now said that he was shot as he put one foot in the trunk of the car.

The next thing Janik heard was mumbling, then he heard someone moving around in the car. The car was shaking, and Janik started screaming and kicking the backseat. The offender yelled to Janik to be quiet. The car stopped shaking and Janik heard a shot and smelled

gunpowder. Janik then heard the car door open and close. The offender yelled at Janik through the trunk, "I didn't want to shoot you but if you I.D. me, I will shoot [*sic*] you." Janik remembered coughing up blood and looking for a way out of the trunk. Janik found a lever and pushed the backseat forward and climbed over it. Monica was in the backseat. Janik crawled to the front of the car and went out the driver's side door and began banging on the doors of houses.

Several years after the offense in this case, the Illinois State Police Bureau of Forensic Sciences established a DNA data bank. On April 10, 1997, vaginal and rectal swabs from Monica Rinaldi and stained fabric from the backseat of her car were sent to the crime lab for DNA analysis. On December 4, 1997, a report was prepared concluding that semen found on the three samples was consistent with having originated with defendant. Thereafter, on May 21, 1998, Janik viewed a lineup and identified defendant as the person who shot him and killed Monica Rinaldi.

Prior to trial, defendant filed a motion to preclude admission of Janik's hypnotically enhanced testimony on the ground that the testimony was the product of hypnosis and other unreliable memory retrieval techniques. The trial court denied defendant's motion, finding that it was not clear whether Janik's memory was restored through hypnosis or by mere passage of time and that the reliability of Janik's hypnotically enhanced testimony was a matter for the jury to decide.

Defendant then filed a renewed motion to preclude the admission of Janik's hypnotically enhanced memory, arguing that the State should be required to produce Dr. Ries to lay a foundation for Janik's testimony and to provide expert testimony regarding the possible effects of hypnosis on a witness. The trial court denied this motion as well, finding that expert testimony on the matter

would invade the province of the jury and that the State's failure to lay a foundation for Janik's testimony was a matter for cross-examination.

The appellate court in *Sutton I* reversed, based upon this court's decision in *People v. Zayas*, 131 Ill. 2d 284 (1989). *Sutton I*, 349 Ill. App. 3d 608. The *Sutton I* court noted that in *Zayas*, this court held that the hypnotically enhanced testimony of anyone other than a criminal defendant is *per se* inadmissible, although a witness may testify to his prehypnotic recall. *Sutton I*, 349 Ill. App. 3d at 615-16. The *Sutton I* court found that Janik's posthypnotic statement clearly was influenced by hypnosis. *Sutton I*, 349 Ill. App. 3d at 617. The *Sutton I* court further held that the error in this case was compounded when the trial court precluded defendant from presenting expert testimony regarding the possible effects of hypnosis and other memory retrieval techniques on a witness's ability to accurately recall events. *Sutton I*, 349 Ill. App. 3d at 617. The *Sutton I* court held that the error was not harmless in light of its findings on defendant's issues concerning DNA evidence. *Sutton I*, 349 Ill. App. 3d at 618.[1]

On remand to the trial court, defendant filed a motion to suppress Janik's entire testimony on the ground that it was hypnotically enhanced and should be suppressed pursuant to *Zayas*. Defendant argued that the appellate court in *Sutton I* determined that Janik's posthypnotic statements were influenced by hypnosis and were *per se* inadmissible, so that the law of the case required suppression of Janik's testimony. The State filed a motion for an evidentiary hearing on the admissibility

---

[1]In *Sutton I*, the appellate court also agreed with defendant that the trial court had erred in denying defendant's pretrial discovery request to independently retest the DNA evidence recovered in the case. On remand, however, defendant chose not to conduct additional tests on the evidence.

of Janik's testimony and identification of defendant. The trial court granted defendant's motion without conducting an evidentiáry hearing, finding that Janik's testimony and identification were rendered inadmissible under *Sutton I*. The trial court also granted defendant's motion *in limine* to exclude Janik's out-of-court statements to police at the scene and in the ambulance pursuant to *Crawford*. The trial court then denied the State's motion to reconsider the *Crawford* ruling.

The State filed an interlocutory appeal of the trial court's pretrial rulings. On appeal, the State argued that the trial court erred in suppressing Janik's 1998 lineup identification of defendant, and Janik's expected in-court identification of defendant, without first holding an evidentiary hearing to determine whether the identifications were based on Janik's independent prehypnotic recall. The State maintained that the trial court improperly concluded that the court's finding in *Sutton I* constituted the law of the case. The State also argued that the *Sutton II* court should apply the palpably erroneous exception to the law of the case doctrine, which allows a reviewing court to depart from the doctrine if the court determines that its prior decision was palpably erroneous. The State also argued that the trial court erred in holding that Janik's out-of-court statements to police at the scene and in the ambulance must be excluded pursuant to *Crawford*.

The appellate court in *Sutton II* affirmed in part and reversed in part. 375 Ill. App. 3d 889. With regard to Janik's testimony, the *Sutton II* court held that its decision in *Sutton I* was not palpably erroneous, although the *Sutton II* court also found that the State had not waived the issue. The *Sutton II* court held there was no need for the *Sutton I* court to remand to the trial court for an evidentiary hearing to determine whether Janik's posthypnotic testimony was anchored in his prehypnotic

recall, because the record clearly showed that Janik's testimony was influenced by hypnosis and was not based upon his prehypnotic recall. 375 Ill. App. 3d at 896. Therefore, Janik's posthypnotic testimony was *per se* inadmissible under this court's decision in *Zayas*. 375 Ill. App. 3d at 896. At retrial, Janik would be allowed to testify only to matters he was able to recall prior to undergoing hypnosis. 375 Ill. App. 3d at 896.

The *Sutton II* court next held that Janik's statements to police at the scene were nontestimonial and therefore were not subject to *Crawford*. 375 Ill. App. 3d at 899. Further, those statements were admissible under the spontaneous declaration exception to the hearsay rule. 375 Ill. App. 3d at 899. However, Janik's statements to police in the ambulance were testimonial. 375 Ill. App. 3d at 899. Nonetheless, the *Sutton II* court held that Janik's statements in the ambulance were not subject to *Crawford* because Janik is available for cross-examination. 375 Ill. App. 3d at 899.

The State has appealed the *Sutton II* court's finding that there was no need for a pretrial evidentiary hearing to determine whether Janik's posthypnotic identification of defendant was based upon his prehypnotic recall, as well as the court's finding that Janik's statements to officers in the ambulance were testimonial. Defendant has appealed the *Sutton II* court's finding that Janik's statements to officers at the scene were not testimonial, and its finding that Janik is available for cross-examination.

## ANALYSIS

### Suppression of Janik's Lineup Identification and In-Court Identification

We first address the State's claim concerning Janik's posthypnotic identification of defendant. The State argues that, pursuant to *People v. Wilson*, 116 Ill. 2d 29 (1987), this cause must be remanded to the trial court

for an evidentiary hearing to determine whether Janik's posthypnotic identification of defendant was based upon his independent prehypnotic recall. The State contends that the appellate court has twice improperly acted as trier of fact in finding that Janik's lineup identification and potential in-court identification of defendant were tainted by the hypnosis treatment he received.

Before we address the merits of the State's argument, we must first address defendant's claim that the State cannot raise this issue because the argument is subject to the law of the case, the State has forfeited the issue, and the issue cannot be raised in an interlocutory appeal.

The law of the case doctrine generally bars relitigation of an issue previously decided in the same case. *People v. Tenner*, 206 Ill. 2d 381, 395 (2002). Thus, the determination of a question of law by an appellate court in the first appeal may be binding on the court in a second appeal. *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). However, even if the law of the case bars relitigation of the issue in the appellate court, the law of the case doctrine is inapplicable to this court in reviewing a decision of the appellate court. *People v. Triplett*, 108 Ill. 2d 463, 488 (1985). Because this is the first time the case has been before this court, we may review all matters which were properly raised and passed on in the course of the litigation. *Triplett*, 108 Ill. 2d at 488. Accordingly we will consider whether the *Sutton II* court should have remanded this cause to the trial court for an evidentiary hearing.

We also reject defendant's claim that the State has forfeited the issue concerning an evidentiary hearing. Defendant claims that the State has forfeited this argument because the State never requested an evidentiary hearing during the first trial and did not raise the issue of an evidentiary hearing in defendant's first appeal. Further, the State did not file a petition for rehearing or for leave to appeal following the decision in *Sutton I*.

We first note that there was no need for the State to request an evidentiary hearing during the first trial because the trial court denied defendant's motion to suppress Janik's testimony and allowed Janik to testify. Further, as the appellate court found when defendant raised the same argument in *Sutton II*, the record established that on direct appeal and following remand, the State consistently argued that Janik's lineup identification and in-court identification of defendant were admissible. 375 Ill. App. 3d at 894.

The State also did not forfeit the issue by failing to file a petition for rehearing or a petition for leave to appeal following the decision in *Sutton I*. Defendant cites no authority supporting his claim that to preserve an issue for interlocutory appeal under Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)), the State must first file a petition for rehearing or a petition for leave to appeal. See *People v. Ward*, 215 Ill. 2d 317, 332 (2005) (point raised in brief but not supported by citation to relevant authority fails to satisfy requirements of Supreme Court Rule 341(3)(7) (188 Ill. 2d R. 341(3)(7)) and is forfeited). In any event, to the extent defendant is suggesting the State should have filed a petition for rehearing or petition for leave to appeal the *Sutton I* decision anticipating that, on remand, the trial court would deny its motion for an evidentiary hearing, we disagree. The *Sutton I* court's finding, that the trial court had erred in precluding defendant from presenting expert testimony, at least suggested that the State could seek an evidentiary hearing on remand to present expert testimony concerning the effects of hypnosis. See 349 Ill. App. 3d at 617-18. In fact, although the trial court on remand ultimately concluded that *Sutton I* was the law of the case and precluded an evidentiary hearing, the trial court initially did set the matter for evidentiary hearing on the admissibility of Janik's testimony.

We also reject defendant's claim that this issue is not appropriate for interlocutory appeal because the State is not challenging a suppression order, but rather is challenging the trial court's conduct in implementing the mandate of the appellate court in *Sutton I*. As the court in *Sutton II* found, the trial court's order on remand suppressing Janik's entire testimony had the substantive effect of preventing evidence from being admitted at trial and impaired the State's ability to prosecute the case, so that the State's claims were properly before the court pursuant to Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)).[2]

Having found that the issue is properly before the court, we next address the merits of the issue. In reviewing a trial court's ruling on a motion to suppress evidence, this court reviews *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008), quoting *People v. Luedema*, 222 Ill. 2d 530, 543 (2006).

In *People v. Wilson*, 116 Ill. 2d 29, this court addressed whether a previously hypnotized witness could testify regarding his prehypnotic recollection. This court held that "the confrontation clause does not necessarily prohibit the use of testimony based on a witness' prehypnotic recollection," as a "total bar on testimony derived from prehypnotic recollection would *** exact an unnecessary toll." *Wilson*, 116 Ill. 2d at 48. Accordingly, the proponent of such testimony should establish the nature and extent of the witness's prehypnotic recall, and the parties should be permitted to present expert testimony

---

[2]Defendant also claims that the State's argument is barred by collateral estoppel and *res judicata*. Defendant, however, fails to argue the merits of these claims, making only passing reference to collateral estoppel in his brief and raising *res judicata* only in the heading to his argument. Accordingly, we find that defendant has waived these arguments on appeal. *People v. Colon*, 225 Ill. 2d 125, 157-58 (2007).

to explain the potential effects of hypnosis. *Wilson*, 116 Ill. 2d at 48-49. Because the parties in *Wilson* could not agree on the extent of the witness's prehypnotic recollection, this court held that the State "must demonstrate to the court that the post-hypnotic identification of the defendant was anchored in the witness' prehypnotic recollection." *Wilson*, 116 Ill. 2d at 49.

Subsequently, in *People v. Zayas*, 131 Ill. 2d 284, this court addressed whether hypnotically enhanced testimony is admissible. This court held that "a witness' hypnotically induced testimony, other than that of the defendant, is not admissible in Illinois courts." *Zayas*, 131 Ill. 2d at 295. We stated that our holding was not inconsistent with *Wilson*, which allowed a witness to testify to her prehypnotic recall. We explained that "[t]he proponent of prehypnotic recall evidence, however, will bear the burden of establishing that the testimony of the previously hypnotized witness is based solely upon that witness' independent, prehypnotic recall." *Zayas*, 131 Ill. 2d at 297.

The appellate court in *Sutton II* held that, in contrast to *Wilson*, there was no need for the *Sutton I* court to remand to the trial court for a pretrial hearing to determine the extent of Janik's prehypnotic recollection, "because the extent of Janik's prehypnotic recall is not in dispute and his prehypnotic description of the assailant is fully set forth in the record." 375 Ill. App. 3d at 896. Likewise, there was no need for the court in *Sutton I* to remand to the trial court for an evidentiary hearing to determine whether Janik's posthypnotic testimony was anchored in his prehypnotic recall since the record clearly showed that his testimony was influenced by hypnosis, making it *per se* inadmissible under *Zayas*. 375 Ill. App. 3d at 896. The *Sutton II* court stated that, at the time *Sutton I* was decided, "it did not take an expert to conclude that Janik's posthypnotic testimony was not

based upon his prehypnotic recall where the record revealed he underwent hypnosis after having given the most generic description of the assailant and emerged from hypnosis giving a far more detailed description of the attacker and a significantly different version of events." 375 Ill. App. 3d at 896. The *Sutton II* court also noted that there was evidence that Janik did not regain any more memory of the offense after ceasing therapy. 375 Ill. App. 3d at 896.

Before this court, the State claims that the appellate court in both *Sutton I* and *Sutton II* improperly acted as trier of fact in holding that Janik's identification of defendant was hypnotically influenced, rather than remanding to the trial court for an evidentiary hearing. The State argues that the appellate court erred in simply comparing Janik's February 14, 1991, prehypnotic statements with his September 16, 1991, posthypnotic statements. The State asserts that the appellate court operated under the erroneous assumption that Janik, after experiencing amnesia, did not remember his assailant until he participated in hypnosis. In fact, the record establishes that Janik regained his memory of the assailant prior to beginning therapy on March 15, 1991.

The State bases its argument on a February 28, 1991, sex-motivated analysis report that was sent to the Illinois State Police on March 2, 1991, as well as the composite sketch of the offender. The State notes that Detective Manescalchi testified at a pretrial hearing concerning the sex-motivated analysis report. The State contends that the sex-motivated analysis report indicates that Janik provided a more detailed description of his assailant than the description he gave on February 14, 1991. The sex-motivated analysis report indicated that Janik described a black offender, 5 feet 11 inches tall, weighing approximately 175 pounds, wearing a tan leather jacket and tan cap or hat, holding a gun in his

left hand. The State also points to Detective Manescal-chi's testimony, both at the pretrial hearing and at trial, that he prepared a composite sketch of the assailant on February 28, 1991, based upon information provided by Janik. The State argues that this sketch was included with the sex-motivated analysis report sent to the Illinois State Police on March 2, 1991, establishing that it was prepared on February 28, 1991.

The State, however, has failed to include either the sex-motivated analysis report or the sketch in the record on appeal. Because the State has failed to include these documents in the record on appeal, we decline to consider whether those documents establish that Janik had pre-hypnotic recall of his assailant. See *People v. Urdiales*, 225 Ill. 2d 354, 419 (2007) (appellant has burden of presenting court with adequate record regarding a claimed error, and any doubts arising from an inadequate record will be resolved against him).

Based on the record before us, then, we agree with the *Sutton II* court that Janik's prehypnotic recall is not in dispute, and that his prehypnotic description of the as-sailant is fully set forth in the record. Janik's prehyp-notic recall of the assailant is fully detailed in his state-ments to the officers at the scene and in the ambulance. The record is devoid of any evidence that, subsequent to Janik's statements on the night of the offense, but prior to beginning therapy with Dr. Ries, Janik regained any memories of the offense or his assailant. Accordingly, there was no need to remand the cause to the trial court for a pretrial evidentiary hearing to determine the nature and extent of Janik's prehypnotic recall.

The State next argues that the appellate court erred in concluding that expert testimony was unnecessary to resolve the admissibility of Janik's identification of defendant. The State asserts that expert testimony could determine whether the seven-year lapse of time between

Janik's hypnosis treatments and his lineup identification of defendant militates against hypnotic influence on that identification.

The *Sutton II* court rejected this argument, holding that "the record clearly showed [Janik's] testimony was influenced by hypnosis making it *per se* inadmissible under *Zayas*." 375 Ill. App. 3d at 896. We agree with the *Sutton II* court. Janik testified that his memory of the offense and offender came back in bits and pieces during his therapy with Dr. Ries, until he regained his memory of the entire evening. Janik also testified that he did not regain any more memories of the offense after he stopped seeing Dr. Ries. In *Zayas*, this court recognized the problem with admitting hypnotically refreshed recollections, stating that, "having been hypnotized, the subject gains complete confidence in his 'restored' memory, forgets how it was 'restored,' and is unable to differentiate between that which he was able to recall before hypnosis and that which the hypnosis elicited." *Zayas*, 131 Ill. 2d at 291. Given that Janik's memory of the offense and the offender was restored solely through hypnosis, it follows that Janik's lineup identification of defendant was tied to his hypnosis therapy with Dr. Ries, even if that identification took place seven years after Janik discontinued therapy. Therefore, the *Sutton II* court properly found that Janik's identification of defendant was influenced by hypnosis, making it *per se* inadmissible under *Zayas*. We affirm the *Sutton II* court's holding that, on remand, Janik should be allowed to testify only to matters he was able to recall prior to undergoing hypnosis.

### Janik's Statements to Police Officers at the Scene and in the Ambulance

With regard to Janik's statements to police officers, the State argues in its appeal that the appellate court erred in finding that Janik's statements to police officers

in the ambulance were testimonial under *Crawford*. Defendant, in his appeal, argues that the appellate court erred in finding that Janik's statements to police officers at the scene were not testimonial under *Crawford*. Defendant also argues that even if this court finds that these statements were not testimonial, the statements are hearsay and are not admissible under the excited utterance or spontaneous declaration exception to the hearsay rule. Because this court generally avoids deciding constitutional questions when other, nonconstitutional grounds exist for resolving the case (see *Stechly*, 225 Ill. 2d 246, 263 (2007)), we will first address defendant's claims that Janik's statements at the scene and in the ambulance did not qualify as excited utterances or spontaneous declarations.

For a hearsay statement to be admissible under the spontaneous declaration exception, there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence. *People v. Williams*, 193 Ill. 2d 306, 352 (2000). Courts employ a totality of the circumstances analysis in determining whether a hearsay statement is admissible under the spontaneous declaration exception. *Williams*, 193 Ill. 2d at 352. The totality of the circumstances analysis involves consideration of several factors, including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest. *Williams*, 193 Ill. 2d at 352, quoting *People v. House*, 141 Ill. 2d 323, 382 (1991).

The period of time that may pass without affecting the admissibility of a statement varies greatly. *Williams*, 193 Ill. 2d at 353. The critical inquiry with regard to time is " 'whether the statement was made while the excitement of the event predominated.' " *People v. Smith*,

152 Ill. 2d 229, 260 (1992), quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.3, at 627 (5th ed. 1990).

Defendant claims that Janik's statements at the scene fail to meet the requirement of an absence of time for fabrication. Defendant notes that the statements were made only after Janik had knocked on several doors, one of the residents had called the police, and the police arrived on the scene. Defendant argues that Janik had several minutes during which the opportunity to fabricate clearly presented itself.

The court in *Sutton II* rejected this argument, finding that there was an absence of time for Janik to fabricate his statements. *Sutton II*, 375 Ill. App. 3d at 899. We agree. Janik made those statements after police officers arrived on the scene in response to calls that Janik was pounding on doors and ringing doorbells. Janik was staggering and bleeding from the head. Janik walked up to the officers and told them that he had been shot and robbed and that his girlfriend had been shot. At defendant's trial, Officer Brian Kuratko from the Lyons police department testified that when he arrived on the scene to assist, he saw defendant with some Brookfield police officers, screaming that his girlfriend was down the block in a car.

Clearly, then, there was an absence of time for fabrication when defendant made his statements to the officers at the scene. As this court stated in *People v. Gacho*, 122 Ill. 2d 221, 241 (1988), "[w]e believe it is inconceivable *** that [the victim] would have spent the time under these conditions to attempt to fabricate a story or statement about the event." Here, too, given the totality of circumstances, we find it inconceivable that Janik would have spent the minutes before the officers arrived attempting to fabricate a statement about the event. Accordingly, we affirm the *Sutton II* court's find-

ing that Janik's statements to officers at the scene were admissible under the spontaneous declaration exception to the hearsay rule.

We next turn to defendant's claim that Janik's statements in the ambulance did not qualify as excited utterances or spontaneous declarations. Defendant asserts that Janik's statements were not spontaneous declarations because more than 20 minutes had elapsed between the crime and the statements in the ambulance.

Officer Moroney testified that at the time Janik made the statement in the ambulance, the emergency medical technicians were trying to clean up the blood on Janik's head to locate the wound. The technicians were also giving Janik oxygen and trying to calm him down. Officer Moroney said that Janik was able to respond to his questions "[o]n and off again." Officer Moroney explained that Janik had to take his oxygen mask off to talk and that "it was highly emotional."

Based upon this testimony, we find that Janik's statements were made while the excitement of the event predominated, so that the 20-minute passage of time between the crime and his statements did not destroy the spontaneity of those statements. Like Janik's statements at the scene, we do not believe that, given the conditions, Janik would have spent the time between the crime and his statements in the ambulance fabricating a statement about the event. Moreover, although defendant does not challenge the other circumstances surrounding Janik's statement, we find that Janik's mental and physical condition, the nature of the event, and the absence of self-interest also support a finding that those statements were admissible under the spontaneous declaration exception to the hearsay rule.

Having found that Janik's statements at the scene and in the ambulance survive traditional hearsay analysis, we next address the State's claim that the ap-

pellate court erred in finding that Janik's statements to police officers in the ambulance were testimonial under *Crawford* and defendant's claim that the appellate court erred in finding that Janik's statements at the scene were not testimonial under *Crawford*. Our review of both issues, then, must begin with a review of the United States Supreme Court's decision in *Crawford*.

In *Crawford*, the United States Supreme Court held that testimonial out-of-court statements may be admitted as evidence at trial only if the declarant testifies or the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365-66. The *Crawford* Court did not define "testimonial" hearsay, although the Court held that, at minimum, it must include statements made in the course of police interrogation, as well as statements that are the result of other types of formal questioning, such as testimony given at a preliminary hearing, before a grand jury, or at a former trial, where there was no opportunity for the defendant to cross-examine. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

Thereafter, in *Davis v. Washington*, and its companion case, *Hammon v. Indiana*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006), the Supreme Court provided further insight into what it meant by "testimonial" statements. The Court explained that a statement to law enforcement personnel will be deemed "nontestimonial" if the circumstances objectively indicate that the primary purpose of the interrogation is to gather information to meet an ongoing emergency. *Davis*, 547 U.S. at 822, 165 L. Ed. 2d at 237, 126 S. Ct. at 2273-74. However, statements to law enforcement will be deemed "testimonial" if circumstances objectively indicate there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events to identify or convict

the perpetrator. *Davis*, 547 U.S. at 822, 165 L. Ed. 2d at 237, 126 S. Ct. at 2273-74.

This court applied *Crawford* and *Davis* in *People v. Stechly*, 225 Ill. 2d 246 (2007). There, a plurality of this court held that a testimonial statement is one which is (1) made in a solemn fashion, and (2) is intended to establish a particular fact. *Stechly*, 225 Ill. 2d at 281, 282. In general, a statement is testimonial if the declarant is acting in a manner analogous to a witness at trial, describing or giving information regarding events that have already occurred. *Stechly*, 225 Ill. 2d at 282. The *Stechly* plurality further concluded that, when the statement under consideration is the product of questioning, either by the police or someone acting on the behalf of law enforcement, the objective intent of the questioner is determinative. *Stechly*, 225 Ill. 2d at 284-85. However, if the statements are not the product of law enforcement interrogation, the proper focus is on the intent of the declarant and the inquiry should be whether the objective circumstances would lead a reasonable person to conclude that his statements could be used against the defendant. *Stechly*, 225 Ill. 2d at 289. This court reaffirmed the framework set forth in *Stechly* in *In re Rolandis G.*, 232 Ill. 2d 13, 31 (2008).[3]

In this case, applying *Crawford* and *Davis*, the *Sutton II* court held that when officers arrived on the scene, the primary purpose of their interrogation was to elicit statements to ascertain whether they were facing an ongoing emergency and, if so, to obtain information necessary to resolve that emergency. 375 Ill. App. 3d at 898. Consequently, Janik's statements to officers on the

---

[3]The State argues in its brief that *Stechly* did not resolve the question of whose perspective governs the testimonial analysis. There is no merit to this claim. *Stechly* clearly answered the question of whose intent is determinative. As indicated, this finding was reaffirmed by this court in *In re Rolandis G.*

scene were nontestimonial and were not subject to *Crawford* and *Davis*. 375 Ill. App. 3d at 899. Further, those statements were admissible under the spontaneous declaration exception to the hearsay rule. 375 Ill. App. 3d at 899.

The *Sutton II* court then held, however, that when Janik gave his statements to the police in the ambulance, circumstances objectively indicated that the primary purpose of the interrogation was to establish the facts of a past crime rather than to ascertain or resolve an ongoing emergency. 375 Ill. App. 3d at 899. Nonetheless, the *Sutton II* court held that Janik's statements to police in the ambulance were admissible and not subject to *Crawford* and *Davis* because Janik was available for cross-examination. 375 Ill. App. 3d at 899. The *Sutton II* court rejected defendant's claim that Janik was unavailable for cross-examination by virtue of his decision to undergo hypnosis, finding that Janik was competent to give testimony concerning matters occurring before he was hypnotized. 375 Ill. App. 3d at 899-900.

We first address defendant's claim that the appellate court erred in finding that Janik's statements to the officers at the scene were not testimonial. Whether a statement is testimonial is a question of law, so that our review is *de novo*. *In re Rolandis G.*, 232 Ill. 2d at 23. Because the statements at issue were the product of law enforcement interrogation, the objective intent of the officer is determinative. See *Stechly*, 225 Ill. 2d at 284-85.

Officer Moroney testified that when he arrived at the scene, he saw Janik coming off the front porch of a home. Officer Moroney said that Janik was "staggering down the stairs." Janik walked up to Moroney and said that he had been robbed and shot and that his girlfriend also had been shot. Moroney testified that Janik had a large amount of blood on his face and some blood on his clothing. Moroney asked Janik "who did this to you" and also

asked where Janik's girlfriend was. Janik said that the offender was a black male, approximately 30 to 35 years old, with a moustache, wearing a dark coat and a dark hat. When Moroney asked where the person went, Janik said that he ran off and pointed in a westerly direction, through an alley. Janik also said that his girlfriend had been shot and was in her vehicle, then pointed to the vehicle. At that point, Moroney called for two ambulances for Janik and for Rinaldi.

Defendant claims that these statements were testimonial because Janik was not speaking about events as they were actually happening, but was describing past events. Defendant claims that these statements are similar to those made at the scene in *Davis* and in the companion case to *Davis, Hammon v. Indiana.* Defendant claims that those cases hold that once a crime is over, statements given to law enforcement are testimonial.

In *Davis*, the victim of a domestic assault made a 911 call while in the midst of a domestic disturbance with her former boyfriend, describing the attack while it was occurring and answering other questions. *Davis*, 547 U.S. at 818, 165 L. Ed. 2d at 234, 126 S. Ct. at 2271. The Court found that the interrogation that took place during the 911 call was not testimonial. The Court noted that: (1) the victim was speaking about events as they were actually happening rather than describing past events; (2) the victim was facing an ongoing emergency; (3) the statements were necessary to resolve the present emergency rather than simply to learn what had happened in the past; and (4) the statements were made frantically, in an environment that was not tranquil or safe. *Davis*, 547 U.S. at 827, 165 L. Ed. 2d at 240, 126 S. Ct. at 2276-77.

In so holding, however, the Court recognized that a conversation that begins as an interrogation to determine the need for emergency assistance can evolve into

testimonial statements once that purpose has been achieved. *Davis*, 547 U.S. at 828, 165 L. Ed. 2d at 241, 126 S. Ct. at 2277. The Court explained that once the 911 operator gained the information needed to address the exigency of the moment and the victim informed the operator that the defendant had driven away, the emergency apparently ended. Therefore, it could be maintained that the statements in response to the operator's questions from that point on were testimonial. *Davis*, 547 U.S. at 828-29, 165 L. Ed. 2d at 241, 126 S. Ct. at 2277.

In *Hammon*, the police responded to a reported domestic disturbance and found the victim alone on the front porch. *Davis*, 547 U.S. at 819, 165 L. Ed. 2d at 235, 126 S. Ct. at 2272. The victim appeared "somewhat frightened," but told the officers that nothing was the matter. *Davis*, 547 U.S. at 819, 165 L. Ed. 2d at 235, 126 S. Ct. at 2272. The officers were given permission to enter the house, where the defendant told them that he and his wife had an argument but everything was fine now. *Davis*, 547 U.S. at 819, 165 L. Ed. 2d at 235, 126 S. Ct. at 2272. The officers took the victim into another room and asked her what had happened, then had her fill out and sign a battery affidavit. *Davis*, 547 U.S. at 819-20, 165 L. Ed. 2d at 235, 126 S. Ct. at 2272.

The Court held that the statements in *Hammon* were testimonial because the primary, if not the sole, purpose of the interrogation was to investigate a possible crime. *Davis*, 547 U.S. at 830, 165 L. Ed. 2d at 242, 126 S. Ct. at 2278. The Court noted that there was no emergency in progress, there was no immediate threat to the victim, and the officers' questions were seeking to determine "what happened" rather than "what is happening." *Davis*, 547 U.S. at 829-30, 165 L. Ed. 2d at 242, 126 S. Ct. at 2278.

Defendant claims that in this case, the offender was

no longer on the scene, so that the initial statement, while in close temporal proximity to the crime, was made after the crime had ended. Defendant argues, therefore, that Janik was describing past events, explaining what *had* happened, rather than what *was* happening. Therefore, those statements are similar to the statements in *Hammon* and the statements to the 911 operator in *Davis* after the offender had left the scene.

We disagree with defendant that the emergency in this case had ended because the offender was no longer on the scene. In so holding, we find instructive a decision of the Court of Appeals of New York in *People v. Nieves-Andino*, 9 N.Y.3d 12, 872 N.E.2d 1188, 840 N.Y.S.2d 882 (2007). In that case, the defendant argued that because the assailant had left the scene and no longer posed a physical threat to the victim, the primary purpose of a police officer's questioning of the victim could not be to meet an ongoing emergency. The court rejected this argument, stating:

"We do not believe that *Davis* imposed such a restricted interpretation of what constitutes a continuing emergency. Whether an officer's primary reason for making an inquiry was to deal with an emergency is a fact-based question that must necessarily be answered on a case-by-case basis. Even when the assailant has fled, the circumstances of the police officer's questioning of the victim may objectively indicate that the officer reasonably assumed an ongoing emergency and acted with the primary purpose of preventing further harm." *Nieves-Andino*, 9 N.Y.3d at 15, 872 N.E.2d at 1190, 840 N.Y.S.2d at 884.

We agree with the *Nieves-Andino* court. In this case, even though the offender had apparently fled when the officers arrived on the scene, the circumstances surrounding Janik's statements to the officers objectively indicate that the officers reasonably assumed an ongoing emergency and acted with the purpose of preventing future harm. The officers arrived on the scene in response to a report of a man banging on doors and ring-

ing doorbells. A bloody and staggering Janik approached the officers and said he had been robbed and shot and that his girlfriend had been shot. In approaching the officers, Janik was seeking help. At this point, the officers could not have known whether the assailant posed further danger to Janik or others and did not know whether the violence had ended or might continue elsewhere. The officers did not know whether the perpetrator was still in the immediate area or whether he would return to the area. Officer Moroney's questioning of Janik, asking who had done this, where Janik's girlfriend was, and where the person went, was part of Officer Moroney's reasonable effort to assess what had happened and to determine whether there was an ongoing danger to Janik and others. Viewed objectively, the nature of what was asked and answered was such that the elicited statements were necessary to be able to resolve an ongoing emergency rather than to simply learn what had happened in the past. Accordingly, the *Sutton II* court properly held that Janik's statements at the scene were nontestimonial and did not implicate defendant's right to confrontation under *Crawford* and *Davis*.

We next address the State's appeal of the *Sutton II* court's finding that Janik's statements to Officer Moroney in the ambulance were testimonial. The State claims that the appellate court erroneously concluded that the emergency had ended when Janik was questioned in the ambulance. The State argues that the police were still addressing an ongoing emergency once Janik entered the ambulance because the police did not know whether the assailant was at or near the scene of the crime until they received a description of the offender from Janik. Given that there was still an offender at large in a residential area, Janik, the officers, and anyone that might encounter the assailant were in imminent danger. Consequently, the State maintains that the primary purpose of Officer

Moroney's interrogation of Janik in the ambulance was to assist in an ongoing emergency, not to gather evidence for a future trial. The State also points to the lack of formality in the exchange between Janik and Officer Moroney.

In support of its argument, the State notes that other courts that have confronted the issue have determined that police interrogations in similar scenarios were aimed to elicit statements to assist the police in addressing ongoing emergencies. The State cites *State v. Ayer*, 154 N.H. 500, 917 A.2d 214 (2006), and *State v. Kemp*, 212 S.W.3d 135 (Mo. 2007).

In *Ayer*, within minutes of a shooting, police officers arrived on the scene and an officer approached defendant's wife, who was standing at the scene crying hysterically. Before the officer could question her, defendant's wife blurted out that "he" said "he was going to shoot him," and that he had been sitting "in his truck all morning waiting for him." *Ayer*, 154 N.H. at 503, 917 A.2d at 220. When the officer asked defendant's wife to whom she was referring, she said it was her husband, identifying him and describing his truck as well as his access to firearms. *Ayer*, 154 N.H. at 503, 917 A.2d at 220. In rejecting defendant's claim that his wife's statements at the scene were testimonial, the court held that the interrogation, objectively viewed, was primarily for the purpose of resolving an ongoing emergency and resulted in the provision of information that enabled officers to immediately end a threatening situation. *Ayer*, 154 N.H. at 510, 917 A.2d at 225.

In *Kemp*, the defendant was smoking crack and held his girlfriend at gunpoint all night. Defendant's girlfriend managed to escape and banged on her neighbors' door screaming for help. The neighbors let her in and called 911. At defendant's trial, portions of the 911 call were admitted into evidence. The court held that the girl-

friend's statements in response to the 911 operator's questions were not testimonial. *Kemp*, 212 S.W.2d at 149. The court noted that although the girlfriend was inside the neighbors' home, she and her neighbors were in the midst of an emergency. *Kemp*, 212 S.W.2d at 148. The court noted that no one was certain where defendant was, where he was going, or what he might do. *Kemp*, 212 S.W.2d at 148-49. The court held that questions about defendant's name, address, possible location, gun, and drug use were directed at resolving a present emergency and helping police determine where to look for defendant. *Kemp*, 212 S.W.2d at 149. Those statements, then, were not testimonial.

We find the preceding cases more analogous to Janik's statements to police officers at the scene, rather than his statements to Officer Moroney in the ambulance. Although the offender was still at large when Officer Moroney questioned Janik in the ambulance, our review of the record indicates that Moroney's interrogation was not directed at addressing an ongoing emergency. Officer Moroney testified that after speaking with Janik on the scene, he gave a dispatch to the surrounding towns to look for an offender involved in a shooting. Moroney gave a description of a black male with dark hair and a moustache, 30 to 35 years old, wearing a dark jacket. At this point, a police unit from Lyons, Illinois, had arrived on the scene and approached Monica Rinaldi's vehicle. Two ambulances arrived, and firefighters checked Monica for a pulse. The area around Monica's car was secured, and the license plate on Monica's car was called in to the desk operator. At that point, Janik was placed into an ambulance.

While in the ambulance, Officer Moroney initiated a conversation with Janik. Moroney testified, "I asked him, can you please tell me again exactly what happened tonight." Janik then gave Moroney a narrative of the

events of the evening. When asked what he did with that information, Moroney said that when he returned to the crime scene, he gave the information to the investigator and returned to the station and did his report. Moroney did not dispatch the information obtained in the ambulance to other police agencies.

It is clear, then, that Officer Moroney's questions were not directed at addressing the ongoing emergency. By the time Janik was placed in the ambulance, the crime scene had been secured. We also find it noteworthy that Moroney began the questioning by asking Janik to tell him "again" exactly what had happened. *Davis* held that "statements deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed" are "an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." (Emphasis in original.) *Davis*, 547 U.S. at 830, 165 L. Ed. 2d at 242, 126 S. Ct. at 2278.

Further, although the State characterizes Moroney's interrogation as intended to gather information that would aid in the apprehension of the armed assailant, and suggests that the questioning was intended to obtain a better description of the assailant, we find that the objective intent of Moroney was intended to establish a particular fact. Moroney did not dispatch a second description of the assailant following his questioning of Janik in the ambulance, nor did he dispatch any information from the ambulance to investigators at the scene. Rather, it was only after accompanying Janik to the hospital and then returning to the scene that Moroney gave the information obtained in the ambulance to the investigator. Under the circumstances, then, we reject the State's claim that Moroney's interrogation of Janik in the ambulance was to assist in an ongoing emergency.

The State also argues, however, that Janik's state-

ments in the ambulance were not made in a solemn fashion, as required to identify a statement as testimonial. The State notes that Janik was only able to respond to Officer Moroney as he took off his oxygen mask. In addition, the interrogation of Janik was not recorded and Janik was not asked to draft or sign a formal statement or affidavit.

With regard to the requirement that the statement be made in a solemn fashion, *Davis* noted that the product of an interrogation by law enforcement officers, directed at establishing the facts of a past crime,

"whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial. It is, in the terms of the 1828 American dictionary quoted in *Crawford*, ' "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." ' 541 U.S., at 51. (The solemnity of even an oral declaration of relevant past fact to an investigating officer is well enough established by the severe consequences that can attend a deliberate falsehood. [Citations.]" *Davis*, 547 U.S. at 826-27, 165 L. Ed. 2d at 240, 126 S. Ct. at 2276.

Based upon the preceding language in *Davis*, we find that Janik's statements to Officer Moroney met the requirement of solemnity under *Crawford*. The product of Moroney's interrogation of Janik in the ambulance, although not signed by Janik, was embedded in Moroney's report. Accordingly, we find that Janik's statements in the ambulance were made in a solemn fashion, and therefore affirm the appellate court's finding that Janik's statements in the ambulance were testimonial.

As noted, however, despite its finding that Janik's statements in the ambulance were testimonial, the *Sutton II* court nonetheless held that the statements were admissible and not subject to *Crawford* and *Davis* because Janik was available for cross-examination. Defendant has appealed this finding, arguing that Janik is unavailable for cross-examination because all of his

statements were influenced by hypnosis. Defendant notes that Janik lost all memory of the offense, and his current memories were "restored" as the result of hypnosis.

The State responds that Janik is subject to cross-examination. The State argues that the confrontation clause guarantees only an opportunity for effective cross-examination, and includes no guarantee that every witness called by the prosecution will refrain from giving testimony marred by forgetfulness, confusion or evasion. The State argues that the United States Supreme Court's decision in *United States v. Owens*, 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988), is directly on point and controls this issue.

In *Owens*, the Court addressed whether the confrontation clause bars testimony concerning a prior, out-of-court identification when the identifying witness is unable, due to memory loss, to explain the basis for the identification. *Owens*, 484 U.S. at 555-56, 98 L. Ed. 2d at 955, 108 S. Ct. at 840. The Court explained that the confrontation clause gives an accused the right to be confronted with the witnesses against him, which has been read as securing an adequate opportunity to cross-examine adverse witnesses. *Owens*, 484 U.S. at 557, 98 L. Ed. 2d at 956, 108 S. Ct. at 841. The Court held, however, that an opportunity for effective cross-examination is not denied when a witness's past belief is introduced, and he is unable to recollect the reason for that past belief. *Owens*, 484 U.S. at 559, 98 L. Ed. 2d at 958, 108 S. Ct. at 842. The Court noted that although the foundation for the belief cannot be effectively elicited, other means of impugning the belief are available. *Owens*, 484 U.S. at 559, 98 L. Ed. 2d at 959, 108 S. Ct. at 842. Further, "[t]he weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958, 108 S. Ct. at 843.

The Court additionally held that its analysis was not altered by the fact that the testimony at issue involved an out-of-court statement that would traditionally be characterized as hearsay, and declined to require the testimony be examined for indicia of reliability, concluding that such an inquiry was not required when the hearsay declarant is present at trial and subject to unrestricted cross-examination. *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958, 108 S. Ct. at 843. In that case, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958-59, 108 S. Ct. at 843.

Based upon *Owens*, we agree with the appellate court that Janik is available for cross-examination. Defendant argues that *Owens* does not apply to this case because Janik was hypnotized, and this court in *Zayas* noted that "previously hypnotized witnesses are virtually immune from effective cross-examination," as the witness is unable to differentiate between what he was able to recall before hypnosis and that which the hypnosis elicited. *Zayas*, 131 Ill. 2d at 291. However, this court in *Zayas* also reaffirmed its decision in *Wilson*, that a witness may testify as to his prehypnotic recall, with the proponent of the testimony establishing that the testimony of the previously hypnotized witness is based solely on the witness's independent, prehypnotic recall. *Zayas*, 131 Ill. 2d at 297.

In this case, there is no evidence that Janik cannot differentiate between what he was able to recall before hypnosis and that which the hypnosis elicited. What Janik was able to recall before hypnosis is reflected in his statements to police officers at the scene and in the ambulance, and his testimony is limited to those prehypnotic statements. Following surgery, Janik was unable to

recollect those statements. There was no evidence in the record that Janik's hypnosis therapy "restored" his memory concerning his statements to the officers at the scene and in the ambulance. Janik testified at trial that he recalled statements to the police on February 14, 1991, but cannot remember what he told them. Consequently, we agree with the State that this issue simply involves prior, out-of-court statements from a witness who is unable, due to memory loss, to explain the basis for those statements. The Court in *Owens* held that such testimony does not violate the confrontation clause. Therefore, we affirm the *Sutton II* court's finding that Janik's statements in the ambulance were admissible and not subject to *Crawford* and *Davis* because Janik is available for cross-examination.

## CONCLUSION

For the foregoing reasons, we affirm the *Sutton II* court's holding that there was no need to remand this cause for a pretrial evidentiary hearing to determine whether Janik's posthypnotic identification of defendant was based upon his prehypnotic recall. We also affirm the *Sutton II* court's holding that Janik's statements to police officers at the scene were not testimonial and were admissible pursuant to the spontaneous declaration exception to the hearsay rule. Finally, we affirm the *Sutton II* court's holding that Janik's statements to police officers in the ambulance were testimonial, but were admissible because Janik is available to testify at trial.

The judgment of the appellate court is affirmed.

*Appellate court judgment affirmed.*

JUSTICE KILBRIDE, specially concurring:

I agree with the majority's decision with the exception of the framework it applies for determining whether Janik's out-of-court statements were testimonial. The majority concludes that the objective intent of the police

officer is determinative because the statements were the result of law enforcement interrogation. 233 Ill. 2d at 112. As set forth in my partial dissent in *Stechly* and my special concurrence in *Rolandis G.*, I believe the declarant's intent should always be the focus of the testimonial analysis. The inquiry should be whether a reasonable adult in the declarant's position would anticipate his or her statement likely would be used in a criminal prosecution. *Stechly*, 225 Ill. 2d at 324-25 (Kilbride, J., concurring in part and dissenting in part); *In re Rolandis G.*, 232 Ill. 2d 13, 48 (2008) (Kilbride, J., specially concurring). I write separately only to express my continued disagreement with the testimonial analysis adopted by the court.

As noted by the majority, the *Stechly* plurality concluded that the objective intent of the questioner is determinative when the statement is produced by law enforcement questioning. 233 Ill. 2d at 111, citing *Stechly*, 225 Ill. 2d at 284-85. If the statement is not produced by law enforcement questioning, the objective intent of the declarant is the focus of the inquiry. 233 Ill. 2d at 111, citing *Stechly*, 225 Ill. 2d at 289. Thus, the *Stechly* plurality devised a test that shifts the focus from the declarant's intent to the questioner's intent depending on the circumstances. The shifting focus was based on the plurality's reading of *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006). *Stechly*, 225 Ill. 2d at 267-68. While the *Stechly* plurality recognized that many authorities had determined the focus of the testimonial analysis is always the declarant's intent in giving a statement, the plurality nevertheless concluded that *Davis* indicated the intent of the officer is determinative when a statement is produced by law enforcement questioning. *Stechly*, 225 Ill. 2d at 267, 289-91.

As explained more fully in my dissent in *Stechly*, I do not believe *Davis* altered the focus of the inquiry for

determining whether a statement is testimonial. *Stechly*, 225 Ill. 2d at 324-25 (Kilbride, J., concurring in part and dissenting in part). To the contrary, *Davis* indicated that the declarant's point of view remains the focus. In particular, *Davis* states, "even when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." *Davis*, 547 U.S. at 822 n.1, 165 L. Ed. 2d at 237 n.1, 126 S. Ct. at 2274 n.1. Additionally, the *Stechly* plurality acknowledged "ultimately it is the declarant's intent to which the confrontation clause looks." *Stechly*, 225 Ill. 2d at 290. Thus, I continue to believe that the declarant's intent is the proper focus in the testimonial analysis.

I acknowledge, however, that a majority of this court has clearly adopted the *Stechly* plurality's framework for determining whether an out-of-court statement is testimonial. See *In re Rolandis G.*, 232 Ill. 2d at 25. Accordingly, while I disagree with that framework, I agree it is now the applicable test in the absence of further direction from the Supreme Court.