No. 2-09-0373      Filed: 5-12-10
_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08--CM--3104 |
| STEVEN CHMURA, | ) ) ) | Honorable Gordon E. Graham, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the opinion of the court:

Defendant, Steven Chmura, was charged by information in the circuit court of McHenry County with two counts of domestic battery (720 ILCS 5/12--3.2(a)(1), (a)(2) (West 2006)). The charges were based on allegations that defendant "struck, pushed, pulled, and/or grabbed" Tracy Chmura. The State was unable to secure Tracy Chmura's attendance at trial. After a jury was selected, but before it was sworn, the trial court heard arguments on a motion in limine filed by the State seeking a ruling on the admissibility of a tape recording of a 911 call purportedly placed by Tracy Chmura. The arguments on the motion in limine focused, in part, on whether Tracy Chmura's statements to the 911 dispatcher were testimonial and therefore barred by the confrontation clause (U.S. Const., amend VI) unless Tracy Chmura was unavailable to testify and defendant had a prior opportunity to cross-examine her. See People v. Stechly, 225 Ill. 2d 246, 279 (2007) (plurality opinion). The trial court ruled that most of the statements were nontestimonial. However, the court

ruled that defendant's constitutional right to be confronted with the witnesses against him would be violated by allowing the jury to hear a particular exchange during which the caller described a physical attack by defendant. The State appeals from this ruling. We reverse and remand.

After the 911 dispatcher answered the call, the caller indicated that she wanted to report an incident of domestic abuse by her husband. The dispatcher asked for the caller's address. The caller provided her address, but indicated that she was calling from a neighbor's home across the street. The dispatcher asked what the caller's husband had done. The caller responded, "He beat the shit out of me." The caller also stated, "[H]e has my son. My two-year-old son and he won't let me have." The dispatcher asked the caller her name. The caller identified herself as Tracy Chmura. Asked whether she needed an ambulance, the caller responded, "No, I don't think so." She added, "I need clothes, he ripped all my clothes off." The caller indicated that her neighbor had given her something to "cover up in." At that point, the following exchange occurred:

"[911 dispatcher:] What did he actually do, did he hit you, punch you, push you?

[Caller:] Everything, he restrained me down. He hit me, he punched me, he backhanded me, he [inaudible] the kitchen floor about 300 times.

[911 dispatcher:] Okay, he's your husband or?

[Caller:] Yeah, and he has my two-year-old son that I tried to take out of the house.

[911 dispatcher:] Is he in danger right now?

[Caller:] Yes he is, he's a danger to my son.

[911 dispatcher:] Do you think he hurt him?

[Caller:] I don't know, he was hurting me in front of our son and I told him to stop and he wouldn't. So I ran out the back door."

Thereafter, the caller identified her husband as Steven Chmura and provided his date of birth. The caller also answered questions about the presence of weapons in the home and whether she and her husband had been drinking. At the hearing on the motion in limine, the dispatcher testified that the questions she asked were designed to determine whether anyone needed medical attention and to enable her to describe the incident to the police officers dispatched to respond to the call. On cross-examination, the dispatcher explained that she asked whether the caller's husband had hit, punched, or pushed her, in order to clarify the caller's prior statement--"he beat the shit out of me." Although the caller stated that she did not think she needed an ambulance, it was important to gather information to determine whether medical attention was necessary.

The trial court ruled that, "subject to authentication," the statements on the 911 tape could be admitted into evidence, except for the following question and answer:

"[911 dispatcher:] What did he actually do, did he hit you, punch you, push you?

[Caller:] Everything, he restrained me down. He hit me, he punched me, he backhanded me, he [inaudible] the kitchen floor about 300 times."

The trial court reasoned that the dispatcher "was eliciting or attempting to elicit a testimonial type response." The State filed a timely notice of appeal. Although defendant has not filed an appellee's brief, the record and the issue raised on appeal are such that review of the merits is appropriate under First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133 (1976).

The sixth amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. This provision, known as the "confrontation clause," extends to the states through the fourteenth amendment (U.S. Const., amend. XIV). Stechly, 225 Ill. 2d at

264, citing Pointer v. Texas, 380 U.S. 400, 406, 13 L. Ed. 2d 923, 927-28, 85 S. Ct. 1065, 1069 (1965). Only statements that are "testimonial" make the speaker a "witness" within the meaning of the confrontation clause. Davis v. Washington, 547 U.S. 813, 821, 165 L. Ed. 2d 224, 237, 126 S. Ct. 2266, 2273 (2006). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Davis, 547 U.S. at 821, 165 L. Ed. 2d at 237, 126 S. Ct. at 2273.

In Stechly--an Illinois Supreme Court case that produced four separate opinions--the plurality described a framework for resolving confrontation clause issues. That framework has since been adopted by the full court. See People v. Sutton, 233 Ill. 2d 89, 111-12 (2009); see also Sutton, 233 Ill. 2d at 125 (Kilbride, J., specially concurring) (acknowledging that "a majority of this court has clearly adopted the Stechly plurality's framework" and that "it is now the applicable test in the absence of further direction from the Supreme Court"). As stated in Stechly:

"[A] testimonial statement of a witness who does not testify at trial is never admissible unless (1) the witness is unavailable to testify, and (2) the defendant had a prior opportunity for cross-examination. [Citation.] Moreover, *** the confrontation clause has no application to nontestimonial statements. [Citations.]

Thus, the threshold question in confrontation clause analysis is, Are the statements at issue 'testimonial'? If not, the confrontation clause places no restriction on their introduction (although they are still subject to 'traditional limitations upon hearsay evidence' [citation]). If the statements are testimonial, the next question is, Will the declarant testify? If so, the confrontation clause again places no restriction on the introduction of the declarant's prior hearsay statements, as the defendant will have the opportunity to cross-

examine--confront--the declarant. [Citation.] Finally, if the statements are testimonial and the declarant will not testify, then the statements are inadmissible unless both (a) the declarant is unavailable to testify, and (b) the defendant had a prior opportunity to cross-examine the declarant." (Emphases in original.) Stechly, 225 Ill. 2d at 279-80.

Whether a statement is testimonial is a question of law, and appellate review is de novo. Sutton, 233 Ill. 2d at 112. In Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the United States Supreme Court noted that "testimony" has been defined as " 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " Crawford, 541 U.S. at 51, 158 L. Ed. 2d at 192, 124 S. Ct. at 1364, quoting 1 N. Webster, An American Dictionary of the English Language (1828). One of the two consolidated cases before the Court in Davis involved statements to a 911 operator by an alleged victim of domestic violence. Characterizing the exchange between the 911 operator and the caller as an "interrogation," the Davis Court held as follows:

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis, 547 U.S. at 822, 165 L. Ed. 2d at 237, 126 S. Ct. at 2273-74.

See also Stechly, 225 Ill. 2d at 282. The Davis Court noted that "[a] 911 call, *** and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to

'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." Davis, 547 U.S. at 827, 165 L. Ed. 2d at 240, 126 S. Ct. at 2276. Thus, a 911 call describing events as they are unfolding stands in contrast to an account given to police hours after the events being described had occurred. Davis, 547 U.S. at 827, 165 L. Ed. 2d at 240, 126 S. Ct. at 2276.

In People v. Dominguez, 382 Ill. App. 3d 757 (2008), an alleged victim of domestic violence placed a 911 call on Christmas morning. Dominguez, 382 Ill. App. 3d at 761. She told the 911 dispatcher that she was just then able to get away from the defendant, who had kept her overnight. She claimed that the defendant had injured her during the night, but she first noticed the injuries in her car mirror. Dominguez, 382 Ill. App. 3d at 761. We held that the statements to the 911 dispatcher were not testimonial:

"Any reasonable listener of the 911 tape would conclude that [the caller] was facing an ongoing emergency and was describing events as they were unfolding. While her injuries may have occurred during the overnight hours *** [the caller] did not become cognizant of her injuries until she was able to break away from defendant and entered her vehicle." Dominguez, 382 Ill. App. 3d at 767-68.

Similarly, in this case there can be no dispute that, when the dispatcher asked the caller whether her husband hit, punched, or pushed her, the information previously conveyed by the caller indicated an ongoing emergency. The caller had stated that her husband "beat the shit" out of her. Although she had fled to a neighbor's house, the danger remained that her husband might follow her there. Far more importantly, the caller had indicated that, in fleeing, she had been forced to leave her two-year-old son behind with her husband. It is likewise clear that the primary purpose of the

dispatcher's question was to assist police (and perhaps paramedics) in responding to the emergency. When we consider statements made in response to questioning by police officers and other law enforcement personnel, our focus is on the intent of the questioner in eliciting the statement. Stechly, 225 Ill. 2d at 284-85. "[E]valuation of that intent must rely on objective circumstances, not testimony from the officer as to his actual subjective intent." Stechly, 225 Ill. 2d at 285. In these objective circumstances, it was imperative for the dispatcher to try to determine how much danger the caller's son was in and what type and degree of violent behavior the responding officers might encounter upon confronting the caller's husband. From this standpoint, it would have been irresponsible not to ask the caller to clarify the statement, "he beat the shit out of me." Likewise, in determining whether an emergency medical response was necessary, the dispatcher would have been irresponsible to rely on the caller's opinion that she did not need an ambulance, without some elaboration on the nature of the beating the caller's husband allegedly administered. We note that the dispatcher posed the question early in the conversation, when the caller's account was still sketchy. Could the dispatcher have formulated a less suggestive question? Perhaps, but the dispatcher was responding to a possible emergency, and we will not parse her words as if she had the luxury of time with which to choose them.

We emphasize the limits of our holding. We have been asked to decide only whether the confrontation clause bars a particular statement. We hold that it does not. We express no opinion on any possible alternative objections to this evidence (whether grounded in the hearsay rule or other evidentiary principles). Any such objections that defendant chooses to raise may be taken up at trial.

For the foregoing reasons, the judgment of the circuit court of McHenry County is reversed and the case is remanded.

Reversed and remanded.

O'MALLEY and BURKE, JJ., concur.