NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230658-U

NO. 4-23-0658

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
|      Plaintiff-Appellant, | ) Circuit Court of |
|      v. | ) Winnebago County |
| RYAN ADAMS, | ) No. 20CM2834 |
|      Defendant-Appellee. | ) |
| | ) Honorable |
| | ) Philip J. Nicolosi, |
| | ) Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Lannerd and Turner concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) In a domestic battery case, statements that the alleged victim, unavailable for trial, made to the police after the incident was over and defendant left the residence were testimonial, and therefore, absent a prior opportunity for defendant to cross-examine the victim, the statements were inadmissible under the confrontation clause (U.S. Const., amend. VI), which applies to the states through the fourteenth amendment (U.S. Const., amend. XIV).

(2) An additional statement that the victim made, the day after the incident, to an investigator for the Illinois Department of Children and Family Services is inadmissible for the same reasons.

¶ 2     In a prosecution of defendant, Ryan Adams, for domestic battery, the State requested the circuit court of Winnebago County to make a pretrial ruling that some prior statements by the alleged victim, Pamela Solache, were admissible in evidence under the hearsay exception in section 115-10.2a of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.2a (West 2022)). The court ruled, instead, that the statements were testimonial and, hence, inadmissible under the confrontation clause (U.S. Const., amend. VI). Having filed a

certificate of impairment, the State appeals. Defendant has filed no brief. Nevertheless, because the record is short and because *Davis v. Washington*, 547 U.S. 813 (2006), is clearly the relevant and dispositive authority, we are able to decide this appeal without a brief from defendant. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Pursuant to *Davis*, we affirm the court's ruling of inadmissibility.

¶ 3                                                     I. BACKGROUND

¶ 4             On November 17, 2020, a criminal complaint was filed against defendant. It was made up of two counts. Count I charged him with domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2020)) in that on November 1, 2020, he allegedly grabbed Solache by the neck. Count II charged him with a violation of his bail bond (*id.* § 32-10(b)) in that on November 1, 2020, he allegedly had contact with Solache, thereby violating a condition of his pretrial release.

¶ 5             On October 5, 2022, pursuant to section 115-10.2a(b) (725 ILCS 5/115-10.2a(b) (West 2022)), the State filed a notice of its intention to present, in the jury trial, some prior statements by Solache. According to this notice, Solache made oral statements to police officers on the day of the incident and to a caseworker of the Illinois Department of Children and Family Services (DCFS) the day after. The State took the position that these statements were admissible under the domestic battery hearsay exception in section 115-10.2a(b).

¶ 6             On March 13, 2023, defense counsel filed a document titled "Defendant's Response to State[']s Motion to Present Statements Based [*sic*] Pursuant to 115-10.2A." In this response, defense counsel objected that "the statements to law enforcement and government agencies [were] testimonial in nature" and that admitting the statements in evidence in the jury trial, therefore, would violate the confrontation clause of the United States Constitution (U.S. Const., amend. VI) as interpreted by *Crawford v. Washington*, 541 U.S. 36 (2004). Defense counsel objected,

alternatively, that even if the statements were non-testimonial, "they lack[ed] circumstantial guarantees of trustworthiness and the interests of justice would not be served by admitting these out of court hearsay statements."

¶ 7        The day when defense counsel filed this response, March 13, 2023, was the day before the jury trial was scheduled to begin. On that day, the parties appeared for a "jury status," and the circuit court took up the question of whether the prior statements by Solache were admissible in lieu of her in-person testimony. The prosecutor explained that, given Solache's history of disobeying court orders to appear at hearings, she was unlikely to come to the trial. The court noted that the date when Solache was required to appear had been changed repeatedly and that the revised date was now the next day, March 14, 2023. The court reasoned that because it was not yet time for Solache to come to the courthouse and testify, she had not yet failed to appear for the trial. Even so, the court proposed that the parties go ahead and make their presentations on the question of whether her prior statements were admissible and that the next day, if she failed to appear for the jury trial, the court would make a ruling at that time. The parties had no objection to this proposed procedure.

¶ 8        Before making a proffer in support of the admission of Solache's prior statements, the prosecutor alerted the circuit court and the defense that an amendment of the charging instrument would be necessary. The alleged unwelcome touching would have to be changed from grabbing by the neck to shoving, given that an investigating police officer named Martensen would be on bed rest after a surgery and thus would be unable to attend the trial the next day. The prosecutor explained:

> "Right now the complaint lists, grabbed on the throat, that would have been information only provided to Officer Martensen. ***

- 3 -

"*** While I was preparing today, and we're adjusting all of this, I just went to the criminal complaint because I'm realizing that I have to view it from not having Officer Martensen available and what then would I prove at a trial?"

The prosecutor had subpoenaed an assisting police officer named Hormig, but because Martensen rather than Hormig had written the police report, the prosecutor did not "know what [Hormig's] specific memory [would] be regarding the incident."

¶ 9 Subject to that contemplated amendment of count I, the prosecutor made substantially the following proffer. On November 1, 2020, at 8:41 p.m., Hormig and Martensen arrived at a residence in Rockford, Illinois, in response to a 911 call made by a 10-year-old child. The child had reported that her mother (Solache) and her stepfather (defendant) were in a "verbal argument." (We quote the prosecutor.) When these police officers arrived, they met Solache "in the kitchen[,] by the front door of the residence." Martensen asked Solache if defendant was still at the residence. Solache answered no. She said that, before the police arrived, defendant left in a Ford Explorer, taking "his 13-year-old son" with him. Three other children were still in the house: a 2-year-old, a 7-year-old, and the 10-year-old who had made the 911 call.

¶ 10 Solache "told the officer" (which officer she told is unspecified in the prosecutor's proffer) that, at about 8:11 p.m., she was in her bedroom when defendant entered the bedroom. He began yelling at her for having "a relationship status on Facebook as being[ ] single," even though they had been in a relationship for the preceding two years. Solache, who was sitting on the bed, replied to defendant that she had no idea what her relationship status on Facebook was set to. Nevertheless, defendant continued yelling at her, and he began shoving her, as if to shove her off the bed. She repeatedly told him to stop touching her, but he kept shoving her. As she reached for

the side of the bed to keep from falling off, he grabbed her by the wrist. She broke free of his grasp and shoved him back. He then put his hands around her throat, applying no pressure. His hands left her throat as she shoved him again. Then he swung his right hand toward her face. As he did so, she leaned back, and his hand missed her face and struck her left breast. She yelled at him to leave. He "left the bedroom and told [his son] that they were leaving."

¶ 11        In the kitchen, defendant attempted to grab Solache's keys, which "included a set of house keys." Solache and defendant struggled over the keys, and he grabbed her by the wrist as she was trying to shove him away. There was a scratch on her right arm, and she believed she had gotten the scratch from his grabbing her by the wrist as they struggled over the keys. He "was able to *** detach her key from the silver house key," and he and his son left the premises. She "did not know why [defendant] and [his son] left, nor where they would be going as the primary place to stay," considering that they had been living with her.

¶ 12        The prosecutor continued:

> "[Solache] refused medical treatment. An officer observed red—a small reddish scratch on the inside of her right forearm about midway up her arm—or it looks like two scratches. A small scratch that was on the inside of her right forearm about midway up and a light abrasion on her arm. Officer Hormig took photos, and then a written statement was taken, DCFS was contacted.
>
> * * *
>
> THE COURT: By the police?
>
> [PROSECUTOR]: Yes."

¶ 13        The prosecutor next described the statement that Solache made on November 2, 2020, to Kristina Steele at DCFS. Solache reported to Steele that Solache and defendant had gotten

into an argument that had turned physical. Solache and defendant were lying on the bed, according to this statement, and "he started to accuse her of cheating and got upset about her Facebook page." Defendant "tried to push her out of the bed and was calling her a [b***]." They got out of the bed, and "she did push him and slap him back." He then tried to take her keys, and they struggled over the keys. Solache "denies knowing where [defendant] is" and "denies that she will allow him back to the home."

¶ 14 After making the foregoing proffer, the prosecutor conceded that because the written statement that Solache had made at Hormig's request "would be for the purpose of prosecution in this case," the written statement "wouldn't come in." In the prosecutor's view, though, the verbal statements that Solache made to the police officers before making her written statement were for the purpose of enabling the police to assess whether there was an "emergency." The prosecutor argued that the verbal statements, therefore, were non-testimonial and, as such, were admissible under section 115-10.2a, without any violation of the confrontation clause.

¶ 15 The next day, on March 14, 2023, Solache failed to appear for the scheduled jury trial. The circuit court stated, "She did have notice to be here today, so, at least, at this point in time, the court finds that Ms. Solache is deemed unavailable." Having made a finding of Solache's unavailability, the court next addressed the question of whether Solache's prior oral statements to the police and to DCFS would be admissible. The court disagreed with the prosecutor's argument that Solache made these statements in an emergency. The court reasoned:

"When she met with the police, at the home, after they arrived, the defendant had already left the premises and he had left with his own son, my understanding is, he had one child and she had, I think, three other children, three or four, I don't recall, and he left the residence, he left Ms. Solache and the only

- 6 -

individual that he took with him was his own child. So I don't think that there was an ongoing emergency. She didn't have any—I think she had a scratch on her but I think based on the facts of the case, I find that there was not an ongoing emergency.

And, likewise, when she met with the agents or caseworkers from DCFS, there was no ongoing emergency, and she was making statements of matters that had already taken place and were not still occurring. These statements were not akin to excited utterances but the interaction and conversations between her and the police and as well as with DCFS were part of an investigation into past criminal conduct.

And although I find that Ms. Solache is unavailable, I cannot find that the statements she made to either the police or later to DCFS to be non-testimonial, specifically, to the police and even with DCFS and even in the event if the Court were to find that they were non-testimonial, which it's not finding, I think their reliability and trustworthiness would come into question, in any event, but I do find that her statements to each agency, to DCFS individuals as well as the police, the testimony of Mr. [*sic*] Solache—or [defendant] has not been afforded the opportunity to cross-examine her or to confront her, really, in any way subsequent to the *** arrest in these proceedings. So in the event she does not show up, her statements to DCFS and to the police will not be allowed by the Court."

¶ 16 At the circuit court's request, a written order was prepared. The order, which the court entered on March 14, 2023, reads as follows:

"This case coming before the court for decision following argument on State[']s notice to present statements per 725 ILCS 5/115-10.2a, the court hereby finds as

follows: The court has considered the statute, record, case law, and arguments of counsel. The court finds that the statements made by Pamela Solache to officers and DCFS were testimonial in nature and that the defendant did not have the opportunity to cross or confront the witness. The statements of Pamela Solache, who is deemed unavailable for today[']s purposes, shall not be presented under this statute."

¶ 17       On April 12, 2023, the State filed a motion to reconsider this ruling. On June 30, 2023, after arguments by the parties, the circuit court decided to adhere to its ruling that Solache's prior statements were inadmissible.

¶ 18       On July 28, 2023, the State filed a certificate of impairment and a notice of appeal from the circuit court's orders of March 14 and June 30, 2023. On August 11, 2023, the State filed an amended notice of appeal, which appears to make only minor, non-substantive changes to the original notice of appeal.

¶ 19                        II. ANALYSIS

¶ 20              A. Admissibility Under Section 115-10.2a(b)

¶ 21       In seeking the admission of Solache's prior hearsay statements to the police and to DCFS, the prosecutor invoked section 115-10.2a of the Code (725 ILCS 5/115-10.2a (West 2022)). "Hearsay is not admissible except as provided by [the Illinois Rules of Evidence], by other rules prescribed by the Supreme Court, or by statute as provided in Rule 101 [(Ill. R. Evid. 101 (eff. Jan. 1, 2011))]." Ill. R. Evid. 802 (eff. Jan. 1, 2011). One such statute, section 115-10.2a(a), provides as follows:

        "(a) In a domestic violence prosecution, a statement, made by an individual identified in Section 201 of the Illinois Domestic Violence Act of 1986 [(750 ILCS

- 8 -

60/201 (West 2022))] as a person protected by that Act, that is not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declarant is identified as unavailable as defined in subsection (c) [(725 ILCS 5/115-10.2a(c) (West 2022))] and if the court determines that:

> (1) the statement is offered as evidence of a material fact; and

> (2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

> (3) the general purposes of this Section and the interests of justice will best be served by admission of the statement into evidence." 725 ILCS 5/115-10.2(a) (West 2022).

¶ 22 The State argues that "no reasonable person would agree with the trial court's decision on the trustworthiness of Solache's statements." The State understands that, by the following remark, the court found that Solache's statements lacked "equivalent circumstantial guarantees of trustworthiness" (*id.*): "[E]ven in the event *** the Court were to find that [Solache's prior statements] were non-testimonial, which it's not finding, I think their reliability and trustworthiness would come into question."

¶ 23 If the circuit court, however, had found that Solache's prior statements were inadmissible under section 115-10.2(a) in that they lacked "equivalent circumstantial guarantees of trustworthiness" (*id.*), the court would have had no reason to address the constitutional issue. See *People v. Palomera*, 2022 IL App (2d) 200631, ¶ 30 ("To be properly admitted, an out-of-court statement must satisfy both a hearsay exception and a defendant's rights under the confrontation

clause."). In fact, by finding section 115-10.2a(a) to be unsatisfied but then, despite such a finding, going ahead and addressing the constitutional issue, the court would have disobeyed case law, which dictates that "courts will address constitutional issues only as a last resort, relying whenever possible on nonconstitutional grounds to decide cases." *People v. Jackson*, 2013 IL 113986, ¶ 14. We presume the court did not make that error. Rather, "we must presume the court knew the law and applied it properly." *People v. Coleman*, 2023 IL App (4th) 220714-U, ¶ 26. In this case, the record does not quite rebut the presumption of regularity. The court's remark was ambiguous and noncommittal. The court stated, "[Even ] in the event *** the Court were to find that [Solache's prior statements] were non-testimonial, which it's not finding, I think their reliability and trustworthiness would come into question." That was not quite the same as finding that the statements lacked "equivalent circumstantial guarantees of trustworthiness." 725 ILCS 5/115-10.2a(a) (West 2022). Instead of construing that remark against the court, we should construe it in the court's favor. We presume that before considering the constitutional admissibility of the prior statements, the court found they had "equivalent circumstantial guarantees of trustworthiness" and that the other prerequisites to admissibility under section 115-10.2(a) likewise were fulfilled. *Id.*

¶ 24                           B. The Confrontation Clause

¶ 25          The confrontation clause, which is in the sixth amendment to the United States Constitution, provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. Through the fourteenth amendment (U.S. Const., amend. XIV), the confrontation clause applies to the states. *People v. Williams*, 238 Ill. 2d 125, 142 (2010). Under the confrontation clause as interpreted by the United States Supreme Court, a testimonial statement by a declarant who is absent from the trial is

- 10 -

admissible only if (1) the declarant is unavailable and (2) the defendant received a prior opportunity to cross-examine the declarant. See *Crawford*, 541 U.S. at 53-54 (2004).

¶ 26　　　　　We decide *de novo* whether a statement is testimonial. See *People v. Sutton*, 233 Ill. 2d 89, 112 (2009). A statement is testimonial if it is " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford*, 541 U.S. at 50 (quoting 2 N. Webster, An American Dictionary of the English Language (1828) (definition of "testimony")). Thus, the two elements of testimony are (1) solemnity and (2) the intention to "establish[ ] the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." *Davis*, 547 U.S. at 826. The solemnity of a statement to an investigating officer can be inferred from "the severe consequences that can attend a deliberate falsehood." *Id.* Solemnity, though, is not enough. The solemn statement must be made for the primary purpose of building a criminal case instead of for the primary purpose of responding to an emergency that is still ongoing. See *Sutton*, 233 Ill. 2d at 110-11; *Palomera*, 2022 IL App (2d) 200631, ¶ 32.

¶ 27　　　　　　　　　　1. *Solache's Statements to the Police Officers*

¶ 28　　　　　The State disputes that Solache's oral statements to the police were testimonial. The State argues that, in questioning Solache, the police were "gather[ing] facts needed to assess the situation for an ongoing emergency to determine whether to put out an all-points bulletin on defendant's vehicle for the safety of the 13-year-old child."

¶ 29　　　　　The State's argument is unconvincing. This 13-year-old child was defendant's son, and defendant was entitled to the custody of his own son. The police had received no information that defendant had been violent toward anyone but Solache. The police had no reason to believe that the boy was in danger. By the time the police arrived at the residence, the crisis was over. Defendant had complied with Solache's demand: he had left, taking his son with him. Solache's

subsequent statements to the police—made solemnly, on pain of criminal penalties for lying (see *People v. Casler*, 2020 IL 125117, ¶ 39)—"deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed." *Davis*, 547 U.S. at 830. She gave an after-action review, so to speak, recounting events "some time after the events described were over." *Id.* These "statements under official interrogation are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." (Emphasis in original.) *Id.*

¶ 30 This is not to suggest that, in all circumstances, an emergency necessarily is over just because the domestic abuser has left the residence. If, for instance, a gravely injured victim has fled the scene and has been banging on neighbors' doors and screaming for help, the emergency could be ongoing in that the assailant might be pursuing the victim. See *Sutton*, 233 Ill. 2d at 115-16; *Palomera*, 2022 IL App (2d) 200631, ¶ 39. In the present case, however, by Solache's account, defendant had left the residence for the apparent purpose of ending the altercation and putting distance between himself and her. So, there was no ongoing emergency when she made her statements to the police. Her statements to the police were testimonial hearsay inadmissible under the confrontation clause, as the circuit court correctly held.

¶ 31 2. *Solache's Statements to the DCFS Investigator*

¶ 32 According to the State, "Solache would have known that DCFS needed to investigate a hotline call to assess the safety of the residence for the children and that DCFS was not working in tandem with law enforcement." That the police were the ones who called DCFS and that the DCFS report ended up in the hands of the prosecutor would suggest that DCFS was working in tandem with law enforcement. See *In re T.T.*, 384 Ill. App. 3d 147, 161 (2008) ("[W]here DCFS works at the behest of and in tandem with the State's Attorney with the intent

and purpose of assisting in the prosecutorial effort, DCFS functions as an agent of the prosecution."); see also 89 Ill. Admin. Code 431.80(m) (2015) ("Record information about child abuse and neglect investigations may be shared with *** state or local law enforcement officers *** who are responsible for child abuse or neglect investigations ***."). Granted, child welfare could have been part of the reason why Solache was interviewed by DCFS, which had to make sure she would not allow defendant to return to the home. There was no child welfare emergency, however. The latest information was that Solache had told defendant to leave and that he had complied. Although, as the State noted, "Solache did not want to pursue charges against defendant" for battery, she was being strongly encouraged to provide evidence for defendant's prosecution. As she calmly sat in an interview room, being questioned by a DCFS investigator, she was "bearing witness against" defendant, "making a formal statement to a government officer with an eye toward prosecution." *T.T.*, 384 Ill. App. 3d at 162. She was doing exactly what she would have done in the witness stand at defendant's trial—she was testifying. See *Davis*, 547 U.S. at 830. Given her unavailability at defendant's trial and defendant's lack of a prior opportunity to cross-examine her, her statement to the DCFS investigator was inadmissible hearsay under the confrontation clause, as the circuit court likewise correctly held. See *Crawford*, 541 U.S. at 53.

¶ 33                                III. CONCLUSION

¶ 34        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 35        Affirmed.

- 13 -