2024 IL App (2d) 230434-U
No. 2-23-0434
Order filed May 28, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-422 |
| KHUMOYUN ERMATOV, | ) ) | Honorable Tiffany E. Davis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) Defendant was proved guilty beyond a reasonable doubt of aggravated domestic battery despite his wife recanting at trial her 911 call reporting that defendant had choked and thrown her.  (2) The wife's 911 call was admissible as an excited utterance where circumstances made it unlikely that she fabricated the allegation that defendant had choked and thrown her.

¶ 2    Defendant, Khumoyun Ermatov, was charged with battering his wife, Daria Ermatov. Following a bench trial, he was convicted of one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2020)) (count I) and two counts of domestic battery (*id.* § 12-3.2(a)(1), (a)(2)) (counts II and III).  Counts II and III merged with count I for sentencing purposes, and defendant

was sentenced to 18 months of felony probation. In this timely filed appeal, defendant argues that (1) he was not proved guilty beyond a reasonable doubt because Daria testified at trial that she lied to the 911 operator and the two responding police officers about being battered and (2) the trial court erred in admitting Daria's 911 call as an excited utterance. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4      Count I of the three-count indictment against defendant alleged that he committed aggravated domestic battery in that he knowingly strangled Daria by applying pressure to her neck. Counts II and III each charged domestic battery and alleged that defendant grabbed Daria by the neck and shoulders, causing red abrasions on her neck. Count II alleged bodily harm and count III alleged physical contact of an insulting or provoking nature.

¶ 5      Before trial, the State filed motions *in limine*. In one of its motions, the State sought to admit at trial the 911 call Daria made on the night of the incident. The State argued that the call's content, although hearsay, was nontestimonial and, furthermore, admissible under the excited utterance exception to the hearsay rule. See Ill. R. Evid. 803(2) (eff. Mar. 24, 2022). Defendant objected. After listening to the 911 call, the court granted the State's motion. The court found that the 911 call was made as part of an ongoing emergency and, thus, was nontestimonial. The court also found that the 911 call met the criteria for an excited utterance and would be admissible on that basis if the State laid the proper foundation at trial.

¶ 6      In another motion *in limine*, the State sought to admit certain prior statements by Daria under section 115-10.2a of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.2a (West 2020)). The court reserved ruling on this motion until trial.

¶ 7       The State's evidence at trial showed that the incident occurred on the evening of June 11, 2022, in Daria and defendant's McHenry County home, which they shared with their six-month-old baby and Daria's two children from another relationship.

¶ 8       Daria testified that she made the 911 call after phoning her sister, Liza.  A recording of the call was admitted into evidence.[1]  On the call, which was made at 11:15 p.m. on June 11, 2022, Daria sounded scared, upset, and on the verge of crying.  When asked for her address, she volunteered that defendant had abused her.  When asked to specify what had happened, she said that defendant had "chok[ed]" and "throw[n]" her and that she had bruises.  She then volunteered further information about the incident.  She said that she had put their baby in the crib, and when she tried to turn off the television, defendant, who had been acting "crazy," began "throwing [her] against *** the whole room."  She noted that defendant was currently on another line with the police, claiming that she was drunk.  She told the operator that she had just returned from her sister's house when the battery occurred.  She confirmed that defendant was currently in the room with her and that she wanted to remain there because she was afraid for their baby.  When asked if "anything like this has ever happened to [her] before," she said yes but that she did not report it. She then stated that she had gone to "immediate care" earlier in the day because of a panic attack. She told the operator that defendant had been abusing her emotionally and physically "this whole time."  She repeated that defendant was accusing her of drinking.  She denied that she was drinking.

---

[1]The State attempted to introduce the 911 call into evidence after its first witness, the 911 operator, testified. The trial court declined to admit the call at that time, citing a lack of foundation. After Daria and other witnesses testified, the State moved to reconsider. The court then reversed its decision and admitted the 911 call, finding that the additional evidence laid a proper foundation.

She also denied that she had come home "screaming" that day. Rather, she had come home quietly with the three children. She had left the house with them because defendant had been "aggressive" for several days.

¶ 9     Daria testified that she and her children left Liza's house at about 10 p.m. on June 11, 2022. Upon arriving home, she prepared to feed the baby in the couple's bedroom. At her request, defendant turned off the television during the feeding. After the feeding, Daria put the baby in her crib near the television in the bedroom. Defendant turned on the television, and this made Daria angry. She repeatedly asked him to turn it off. When he refused, she pulled on the power cord to unplug the television. This caused the television to shake. Defendant, afraid that the television would fall on Daria or the baby, "touched [Daria's] shoulder and moved [her] away." Daria denied that defendant grabbed her by the neck and choked her. After the incident, she phoned Liza for about two minutes. After speaking with Liza, she called the 911 operator. The police arrived before Liza did. Liza was with Daria when the police interviewed her. The sisters spoke Russian to each other during the interview. Liza was "tell[ing] [her] what to say." She also gave the police a written statement. The trial court admitted the statement under section 115-10.2a of the Code. Daria had written that, when she attempted to turn off the television, defendant grabbed her by the neck and choked her, causing her to feel dizzy and short of breath.

¶ 10    However, Daria testified that she lied to the 911 operator and the police about defendant battering her. She denied that he choked, pushed, or shook her or caused her bodily harm. She claimed she falsely accused defendant of battery because she was angry with him about their finances. She was also suffering from postpartum depression at the time. Moreover, she had several glasses of wine at Liza's house before returning home on the night of the incident. On the day after the incident, she attempted to speak with the prosecutors about dropping the charges, but

no one was in the office when she called, as it was a Sunday. She admitted that she was unemployed, had no money, and was sponsoring defendant so that he could obtain his United States citizenship. She testified that she loved defendant. She admitted that he was the family's sole breadwinner and that she would be unable to support herself and her children if defendant were deported.

¶ 11 The State also called Officers Trevor Wogsland and Adrian Vergara, who had responded to Daria's 911 call. Vergara described Daria as "obviously distraught" and a "little frantic." She had "[v]ery puffy, teary eyes." According to Wogsland, Daria was "very upset"—"still upset following the incident." The officers did not detect the odor of alcohol on Daria or see any other sign that she was under the influence of alcohol. Daria spoke to the officers while Liza was present to calm her. Daria and Liza spoke to each other in Russian (Wogsland testified that he did not speak Russian, and Vergara was not asked whether he did.). Daria told the officers that she was "the victim of a domestic battery." The officers observed red marks on her shoulders and the sides of her neck. The officers also testified that defendant was calm and cooperative. Neither officer examined the couple's bedroom, where the incident happened. Photographs the police took of Daria on the night of the incident showed faint red abrasions on her shoulders and around her neck.

¶ 12 The trial court, in a lengthy oral ruling, found defendant guilty of all three counts, *i.e.*, aggravated domestic battery (count I) and two counts of domestic battery (counts II and III). In doing so, the court found that Daria's trial testimony about the incident was "stiff, robotic, rehearsed," and, ultimately, incredible. The court instead found credible the 911 call, Daria's written statement, and the testimony of the two responding police officers.

¶ 13 Defendant filed a posttrial motion, "renew[ing], and incorporat[ing] by reference, all pre-trial motions *in limine* denied by the [c]ourt" and arguing that the "[c]ourt erred in overruling itself

by admitting Daria's 911 call into evidence." After a hearing, the trial court denied the motion. As noted, after merging the counts, the court sentenced defendant on count I alone. Defendant then filed this timely appeal.

¶ 14                                    II. ANALYSIS

¶ 15     On appeal, defendant argues that (1) he was not proved guilty beyond a reasonable doubt of aggravated domestic battery because Daria testified at trial that she lied to the 911 operator and the responding police officers that defendant battered her and (2) the trial court erred in admitting the 911 call as an excited utterance. We address these issues in turn.

¶ 16                          A. Sufficiency of the Evidence

¶ 17     A defendant's conviction will be set aside on appeal only if the evidence against him is so improbable or unsatisfactory that it creates a reasonable doubt of his guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

¶ 18     Here, we determine that defendant was proved guilty beyond a reasonable doubt of aggravated domestic battery. The 911 call, Daria's written statement, the testimony from the two responding officers, and the photographs of Daria's injuries established that defendant placed his hands around Daria's neck and choked her, impeding her breathing and leaving red abrasions around her neck and shoulders.

¶ 19     Defendant claims that he was not proved guilty beyond a reasonable doubt because, although "[i]t is not impermissible for a judge to find prior evidence more credible than what a witness testified to at trial, *** there needs to be at least some corroboration by other witnesses or

other evidence." Defendant suggests that the evidence that he battered Daria should not be credited over the evidence that she fabricated the incident, *e.g.*, her recantation and her testimony that she was intoxicated, suffering from postpartum depression, influenced by Liza, and angry with defendant. According to defendant, it is much more plausible that Daria lied about what happened than that defendant, who was calm and cooperative with the police, battered her simply because she attempted to turn off the television.

¶ 20    Defendant's argument amounts to nothing more than a request that we reweigh and reevaluate the evidence to favor him. Resolving conflicts in the evidence and weighing any inconsistencies are within the province of the trial court. *People v. Hernandez*, 319 Ill. App. 3d 520, 533 (2001); *People v. Hruza*, 312 Ill. App. 3d 319, 325 (2000). The trial court "is free to accept or reject as much or as little of a witness's testimony as it pleases." (Internal quotation marks omitted.) *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67. We will not reassess Daria's credibility or reweigh the evidence, as it is not our function to retry defendant. See *People v. Patterson*, 314 Ill. App. 3d 962, 969 (2000). Viewing all the evidence in the light most favorable to the State, which we must, we determine that defendant was proved guilty beyond a reasonable doubt.

¶ 21                      B. Admission of the 911 Call

¶ 22    The second issue defendant raises on appeal is whether the trial court erred in admitting Daria's 911 call under the excited utterance exception to the hearsay rule (see Ill. R. Evid. 803(2) (eff. Mar. 24, 2022) (hearsay exception for "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition")). The State argues that defendant forfeited review of the issue because he failed to raise it in his posttrial motion. See *People v. Denson*, 2014 IL 116231, ¶ 11 ("In criminal cases, *** a defendant

preserves an issue for review by (1) raising it in either a motion *in limine* or a contemporaneous trial objection, and (2) including it in the posttrial motion.").

¶ 23    In his posttrial motion, defendant "renew[ed], and incorporat[ed] by reference, all pre-trial motions *in limine* denied by the [c]ourt" and claimed that the "[c]ourt erred in overruling itself by admitting Daria's 911 call into evidence." Neither argument concerns the issue defendant raises now. First, the trial court *granted* the motion *in limine* concerning the 911 call. Second, at trial, the court initially barred admission of the 911 call because the State failed to lay a proper foundation. The court later reversed itself when the State laid a proper foundation and moved the court to reconsider its ruling. That reversal in no way concerned whether the 911 call met the substantive requirements for admission under the excited utterance exception to the hearsay rule. Because defendant did not raise the issue in his posttrial motion, he has forfeited it.

¶ 24    In his reply brief, defendant claims that we may review the issue under the plain error rule. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000) (the defendant may raise plain error for the first time in the reply brief). The plain error rule allows us to review a forfeited issue when (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "[the] error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant argues that we may review his issue under the first prong of plain error. Our ability to do so depends first on whether an error occurred. See *People v. Logan*, 2024 IL 129054, ¶ 53 ("The first step in applying the plain error doctrine is to determine whether error occurred."). Accordingly, we first determine whether error arose in admitting the 911 call as an excited utterance.

"The excited utterance exception allows the substantive admission of an otherwise inadmissible hearsay statement where the proponent of that statement is able to demonstrate (1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence. [Citation.] \*\*\*." *People v. Lerma*, 2016 IL 118496, ¶ 5, n.1; see Ill. R. Evid. 803(2) (eff. Mar. 24, 2022).

Courts consider the totality of the circumstances in determining whether a statement is admissible under this exception. *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). "The totality of the circumstances analysis involves consideration of several factors, including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest." *Id.* "No one factor is determinative and each case must rest on its own facts." *People v. Dominguez*, 382 Ill. App. 3d 757, 768 (2008).

¶ 25    Under the second requirement for an excited utterance, our supreme court "do[es] not require the time between when the startling event occurs and when the declarant makes statements in response to that event to be contemporaneous." *People v. Smith*, 152 Ill. 2d 229, 259-60 (1992); see *Sutton*, 233 Ill. 2d at 107 ("The \*\*\* time that may pass without affecting the admissibility of a statement varies greatly."). "Rather, the proper question is whether the statement was made while the excitement of the event predominated." *Dominguez*, 382 Ill. App. 3d at 768-69.

¶ 26    As to requirements (1) and (3), Daria's 911 call reported an incident in which defendant choked and threw her when she tried to turn off the television after putting their baby down to sleep. Her statement clearly related to the entire occurrence, *i.e.*, the details of the battery and what led up to it. Such an occurrence was, of course, sufficiently startling to produce a spontaneous and unreflecting statement. Regarding requirement (3), we recognize that Daria called Liza before

calling 911. Nonetheless, the emotion in Daria's voice during the 911 call conveys that she remained under the stress of the event. She was even still "very upset," "obviously distraught," and a "little frantic" when the officers arrived. Thus, the intervening call to Liza did not diminish the emotional impact of the incident. Furthermore, under the totality of the circumstances, we see no error in the admission of the 911 call. Daria did recant at trial the allegations she made in the 911 call and claimed she had lied out of anger. Moreover, she indicated not only that she had spoken to Liza before dialing 911, but also that she had been suffering from postpartum depression and had drunk several glasses of wine at Liza's. However, fabrication was unlikely given the nature of the event, its proximity to Daria's 911 call, the genuine distress in Daria's voice during the call, and the persistence of that emotion until the officers arrived. Nor can we overlook that making a false 911 report would not be in Daria's self-interest because of potential criminal liability. See *People v. Fernschuss*, 2021 IL App (2d) 190986-U, ¶ 54; 720 ILCS 5/26-1(a)(6) (West 2020). Because the 911 call was properly admitted as an excited utterance, there was no error, and defendant's forfeiture stands.[2]

¶ 27                                    III. CONCLUSION

¶ 28    For these reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 29    Affirmed.

---

[2] We note that the State did not seek to admit the 911 call under section 115-10 of the Code (725 ILCS 5/115-10 (West 2022)). Accordingly, we do not address whether the call would have been admissible under that statute.